THE CITY OF JUNCTION CITY v. HARRIET BLADES.

1. WITNESS —*Opinion Evidence—Error.*   It is error to permit witnesses to give their opinions over the objection of defendant as to whether street crossings are dangerous or safe, who are not shown to be experts, or possessed of any particular skill or knowledge with reference to street crossings, but who have merely seen the street crossing at which the accident in the present case occurred.

2. ——— *Inadmissible Evidence.*   It is inadmissible for the plaintiff, for the purpose of showing her injuries, their character or extent, or in order to enhance her damages, or for any other purpose, to introduce evidence to prove her financial condition.

3. DEFECTIVE CROSSINGS — *Negligence — Notice Presumed.*   It is not necessary, in order to charge a city with negligence or carelessness for defective street crossings, that notice of the defect should be brought to it by actual complaint.   If the city carelessly and negligently permit defects to exist in its street crossings, no matter how caused, for so long a time that notice is presumable, then it becomes liable if a person is injured thereby without fault or negligence on the part of the party injured.

4. ——— *Erroneous Instruction.*   An instruction which clearly indicates to the jury that a material fact in dispute does, or does not, exist is erroneous.

5. INSTRUCTIONS, *Applicable—Definitions, Refused—Error.*   A trial court in all cases should give such instructions as are applicable to the facts proven and the issues raised in the case, and should embody therein the legal definition or definitions of the important technical words and phrases which are used, and are necessary to be understood by the jury for a proper determina-

tion of the case. And when the instructions given fail so to do, it is error for the court to refuse an instruction asked which so defines such words.

6. ———— *Testimony too Remote—Presumption.* Testimony of general habits of carefulness is too remote to raise a presumption that they have been exercised in any given case.

7. JURY—*Inspection of Place, not Evidence.* The inspection of a place by the jury is not evidence, but merely comes in aid thereof, and the information which the jury may acquire from making the view is not to be elevated to the character of exclusive or predominating evidence.

MEMORANDUM.—Error from Geary district court; JAMES HUMPHREY, judge. Action brought by Harriet Blades against the city of Junction City, to recover damages for certain bodily injuries. Judgment for plaintiff. The defendant brings the case here. Reversed. The facts are substantially stated in the opinion, filed September 18, 1895.

*Thomas Dever*, for plaintiff in error.

*Humphrey & Laundy*, for defendant in error.

The opinion of the court was delivered by

GILKESON, P. J. : This was an action brought by Harriet Blades against the city of Junction City for injuries resulting from a fall caused by an alleged defect in the construction of a culvert and street crossing. The answer was a general denial, and the further defense of contributory negligence. Trial had before court and jury, which resulted in a general verdict and special findings in favor of the plaintiff and against the defendant for the sum of $1,870. Motion was made by the defendant for new trial upon several grounds, but was overruled, and new trial refused, and judgment rendered in favor of the plaintiff against said defendant for the sum of $1,870, and the

defendant then brought the case to this court for re-
view.

The facts in this case appear to be substantially as
follows : The plaintiff below, while crossing Eighth
street, which runs east and west, on the west side of
Adams street (running north and south), about 8
o'clock on the evening of June 8, 1894, (said evening
being very dark on account of an approaching storm)
stepped from a crossing, or rather the covering of a
culvert, which was generally used as a street crossing,
into the culvert, 26½ inches in depth, falling violently
upon some broken stone or other hard substance in
the bottom thereof, thereby sustaining injuries, viz.,
fracture of the lower end of the outward bone of the
leg, with a dislocation at the ankle-joint, and receiv-
ing numerous bruises on her body and particularly
about the chest.   This culvert or ditch is at the out-
side of the sidewalk line, and extends a considerable
distance both north and south of the covering.   The
south end of the covering on Adams street extends as
far south as the sidewalk on the south side of Eighth
street, but, on the north, it does not extend as far
north as the sidewalk on the north side of Eighth
street.   There are no sidewalks on the west side of
Adams street at or near where it crosses Eighth
street — merely a footpath ; nor is there any street
crossing (properly speaking) over Eighth street, on
the west side of Adams, and the top of this culvert,
or ditch, being planked, has been for a number of
years used by the people generally as a street cross-
ing.   The ditch and covering were constructed some
8 or 10 years previous to the accident, and ever since
had been in the same condition in which they were
on the night of the 8th of June, 1894.

I. The first error complained of is, in permitting

H. G. Sawtelle to answer certain questions in reference to the other accidents happening on this sidewalk. We believe that such testimony was admissible as tending to establish the condition of the sidewalk. One of the facts it was necessary to establish in this action was the condition of this sidewalk. Of course this could be proven in different ways, and by other evidence than that of other accidents. This is not the most practical and positive evidence of which the case is susceptible, but the simple fact that there were other accidents on this culvert or crossing would tend to show it was unsafe. When the question of the proper condition or safety of anything constructed is to be determined, evidence tending to show that it served the purpose for which it was designed is always competent, and often most satisfactory and conclusive in its character. On the other hand, evidence to show that frequent and repeated accidents resulted from its use would be testimony to show that it was not properly constructed. This crossing had been tested by actual use, and this evidence tended to show that it was dangerous and unsafe. ( City of Topeka v. Sherwood, 39 Kas. 690.) In permitting said witness to answer question number 178, and give his opinion as to whether or not the culvert was safe, we think the court erred. ( City of Parsons v. Lindsay, 26 Kas. 426 ; City of Topeka v. Sherwood, 39 id. 690.)

II. The next error assigned is in permitting the plaintiff to testify as to her financial condition. We cannot agree with counsel for defendant in error, that this was designed to show the amount of damages to be recovered. The answer speaks for itself, and is a statement of the plaintiff's financial condition. This is never competent. To permit the introduction of this kind of

testimony is virtually to impose upon the city the burden of supporting the plaintiff. This the law does not require. The law treats all persons alike, whether rich or poor, and the plaintiff cannot show that he is either rich or poor for the purpose of enhancing his damages. (*City of Parsons v. Lindsay*, 26 Kas. 426.) The plaintiff has a right to show the nature or extent of her injuries ; her suffering ; the length of time she was disabled ; the value of her time ; her expense in being cured ; her condition with respect to the injuries at the time of the trial ; the effect the injuries will have upon her in the future. And the latter (the effect of the injuries) may be proven by professional opinion of the physician or surgeon who has made a sufficient examination of the injuries. But, it is certainly incompetent, for the purpose of showing the nature or character or extent of her injuries, for the purpose of enhancing the damages which she expects to recover of the plaintiff in error, to prove her pecuniary condition, whether she was rich, or whether she was poor. She might, with as much propriety, be allowed to testify as to her social condition or her religious affiliations. Neither of these would throw any light upon the character or extent of her injuries, nor could they tend in any way to show how much she was damaged, nor in any way enhance or diminish the amount for which the plaintiff could recover. (*K. P. Rly. Co. v. Pointer*, 9 Kas. 620.)

III. Plaintiff in error complains of the overruling of its demurrer to the evidence. "A demurrer to the evidence should not be sustained where there is some proper evidence to establish every material allegation of the petition." (*Steelsmith v. U. P. Rly. Co.*, ante, p. 10.)

IV. Again, the plaintiff in error complains that the

court erred in not allowing plaintiff in error to show that no complaint had ever been made to the city, or its officers, that the place where the accident occurred was unsafe. We do not think that the plaintiff in error was prejudiced by this refusal.

" Complaint to the city authorities is not necessary to charge the city with negligence or carelessness, if it permit defects to exist for so long a time that notice is presumable." (*City of Atchison v. King,* 9 Kas. 550 ; *Kansas City v. Bradbury,* 45 id. 381 ; *Jansen v. City of Atchison,* 16 id. 358.)

In this case, the petition charges that the city made this culvert, or dug these ditches, thereby rendering it difficult and unsafe for persons to cross the street ; that the city constructed with boards, what was designed to, has ever since, and does now, serve the purpose both of a covering of the culvert running underneath the same, and a crossing over which persons on foot, passing along the west side of said street, should pass ; and that they have continued for several years to allow this place to be in this condition. We perceive no error in the ruling of the court in this respect.

V. Again, the plaintiff in error complains that the court erred in sending the jury, over the objection of the plaintiff in error, a second time to view the place where the accident occurred. Section 277 of the code provides : " Whenever in the opinion of the court it is proper for the jury to have a view . . . of the place in which a material fact occurred, it may order them to be conducted in a body," etc. This unquestionably leaves the matter of viewing the place to the discretion of the court, and has been repeatedly so held by the supreme court of this state. There is no limit as to the number of views that may be ordered. In fact,

the language of the statute, "whenever in the opinion
of the court," negatives such a conclusion.   And we
see no reason why this should not be so.   In fact, we
can see many circumstances that might arise in the
trial of an action that would render a second, or even
a third, view of the place very important.   We fully
agree with counsel for plaintiff in error, that such a
view is not testimony, but comes in aid of testimony ;
but we cannot say that by sending the jury a second
time any such inference as is contended for by plain-
tiff in error can be drawn.   As said by SIMPSON, C.,
in *Coughlen v. C. I. & K. Rly. Co.*, 36 Kas. 422 :

"We will not undertake to discuss the varying im-
pressions that might be conveyed to the mind of the
jury by a [second] view of the premises.   We are
bound to presume that the purpose of the legislature
in allowing them to be taken to the locality is a wise
one, and, in the absence of a proper showing, there
are no means of determining whether the view resulted
favorably or unfavorably to the plaintiff in error."

VI.   The next assignment of error is upon the giving
of paragraph 4 of the instructions, viz. :

"The evidence tends to show that the plaintiff had
crossed the bridge frequently before in the daytime,
*and on the night in question was proceeding cautiously
over it,* but miscalculated the distance she had gone
over it, *and, without fault on her part,* fell over the end
of the bridge into the ditch, and received the injuries
now complained of.   .   .   ."

The language used in these instructions is not the
most appropriate, and they could have been couched
in much more fitting terms.   Counsel for defendant in
error complain that the criticism upon the instruc-
tion arises from the fact that counsel for plaintiff in
error does not understand the meaning of the word
"tends."   If this is such a term as would confuse

counsel, how are we to say what the jury thought it meant? Trial courts ought to be very careful not to impose an opinion as to facts in dispute, for it is well recognized that juries have a great respect for opinions of the trial court, and are always on the alert for some intimation as to what the trial court thinks of the case. Taking this paragraph as a whole, and considering it altogether, we think it erroneous.

VII. The next error assigned is the giving of paragraph 6 of the court's instructions, and refusing to give paragraph 4 asked by the plaintiff in error. It would have been well for the court to have given in the general charge a definition of "ordinary care"— what ordinary care would be under certain circumstances. He should have said to the jury that if the plaintiff knew the crossing, and that it was dangerous, and the night dark, then it required greater diligence and care than it would under other circumstances and at other times. (*Corlett v. City of Leavenworth*, 27 Kas. 673; *Osage City v. Brown*, 27 id. 74.) But this care, whatever it would be, still would be ordinary care; and ordinary care and caution is all that is required at any time to avoid the class of injuries complained of in this action, and what constitutes it must be determined by the facts in each case. The expression, "ordinary care," is generally defined—

"Such care as is usually exercised under like circumstances by persons of average prudence." "The term, like many other things in law, is incapable of exact definition. It is a relative term, and in order to be ordinary care it must accommodate itself to the exigencies of the case in which it is exercised." (*Quirk v. St. L. U. E. Co.*, 28 S. W. Rep. 1080.)

Under the circumstances of this case, owing to the

omission from the general charge of any definition or explanation of the term "ordinary care," as above stated, we think it was proper; and the court erred in refusing to give the second subdivision of paragraph 4, which contains such definition or explanation, as requested by the plaintiff in error, and in giving paragraph 6.    It is also contended that the court erred in giving the following instruction:

"You have seen the plaintiff and heard the testimony, and also the testimony respecting her habits of carefulness.    You can judge, therefore, whether she is a heedless, or careful and prudent person, and also with what degree of care and prudence she was proceeding in crossing the bridge on the night in question; and, if she used due precaution to avoid injury, she cannot be chargeable with contributory negligence."

While this instruction is applicable to testimony admitted in this case (without objection), we cannot say that it is correct.    It gives the jury to understand that if the plaintiff was usually careful, she was so on the night in question.    Ordinary habits of carefulness raise no presumption that they are always indulged in.    It is well known that very prudent people sometimes act very imprudently.    Testimony of general habits of carefulness is too remote to raise the presumption that they are exercised upon any particular occasion.    In giving this instruction, therefore, we think the court erred.

VIII.    The next error complained of is in the giving of the following instruction:

' "You have also seen the place where the injuries to the plaintiff are said to have occurred.    You are entitled to form your own judgment as to whether the bridge was a reasonably safe crossing of Eighth street on a dark night, and unlighted street.    You are not bound by the testimony of those who have given their

opinion on the subject. You should consider them in the light of your knowledge and judgment gathered from the view of the locality."

Two or three lines of this instruction are open to criticism. The language used by the court in the last subdivision above is perhaps stronger than it should be, and would warrant the jury in rendering a verdict on a material fact in this case, viz., the safeness or unsafeness of the crossing in question, upon their own judgment from what they saw, regardless of any of the sworn testimony in the case. This is erroneous. The inspection of the place in question is not evidence, but merely comes in aid thereof. We understand that the object of a view is to acquaint the jury with the physical situation, condition, and surroundings of the thing viewed. As said by Judge Thompson, in his work on Trials:

"But the evidence which the jury may acquire from making the view is not to be elevated to the character of exclusive or predominating evidence. They are not to disregard other evidence in regard to the character and value of the property, and an instruction which conveys to them the impression that they may do so, is erroneous."

And this view has been adopted by the supreme court of this state. (*City of Topeka v. Martineau*, 42 Kas. 387; *C. K. & W. Rld. Co. v. Mouriquand*, 45 id. 170.) As to the special questions and answers of the jury, we shall only say that they are unsatisfactory, but cannot say that the defendant was prejudiced thereby.

For the reasons herein set forth, the judgment in this case will be reversed, and the cause remanded for new trial in accordance with the views herein expressed.

All the Judges concurring.