THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. C. C. CLONCH.

No. 48.

1. RAILWAY COMPANY—*Cattle-guard—Opinion Evidence.* When, in an action for damages against a railway company, a material fact to be determined is whether the railway company was guilty of negligence in failing to construct a cattle-guard across its track where it intersects a public highway, it is error for the court to permit witnesses to testify that in their opinion a cattle-guard could not

be constructed. and maintained at such place without endangering the lives and limbs of the railway employees.

2. ――――― *Killing Stock— Cattle-guard—Propriety of Location.* Where a railway company locates its depot in such proximity to a public highway that it becomes necessary to cross the same by a side-track, in the necessary use of which the lives and limbs of railway employees would be endangered should a cattleguard be constructed at a place where the track intersects the highway, the propriety of such location cannot be inquired into in an action brought by a private person against the railway company to recover damages for the killing of stock which strayed upon the line of the road because of the want of such cattle-guard.

MEMORANDUM.—Error from Jackson district court; ROBERT CROZIER, judge. Action by C. C. Clonch against The Chicago, Rock Island and Pacific Railway Company for killing stock. Verdict for defendant. From an order granting a new trial, defendant brings the case to this court. Modified. The opinion herein was filed February 14, 1896.

The statement of the case, as made by CLARK, J., is as follows:

This action was brought in the district court of Jackson county by C. C. Clonch, to recover from the Chicago, Rock Island & Pacific Railway Company the value of two mules, one mare, and two colts, which were killed by the defendant in the operation of its road near Streight Creek, a small station on defendant's line of road in said county. The particular acts of negligence which plaintiff alleged in his petition, and upon which he based his right to recover damages, are, that the defendant had failed to inclose its right of way, at the place where it intersects a public highway, with a good and lawful fence, to prevent live stock from being on the track; and that those operating the train did not cause the whistle of the engine to be sounded 80 rods before reaching the highway, nor exercise any care to avoid the injury complained

of ; and that these animals, without the fault of plaintiff, entered the public highway and from thence upon the right of way, on the southeast quarter of section 7, township 6, range 16, being within the inclosed and improved farm of L. T. Smith, where they were struck by a passing engine and killed. The plaintiff established the fact that the track was not inclosed with a good and lawful fence where it leaves the highway in question. In fact, there was no controversy upon this point. The accident was supposed to have occurred about 4 o'clock in the morning of November 14, 1890. The record does not show that any one saw the animals after the evening of November 13, until the following morning, when they were discovered by the defendant's station agent, on the right of way north of the highway on the said southeast quarter of section 7, four of them being dead and the other one badly injured. The court sustained an objection to the introduction of any evidence upon the question as to whether or not the employes of the railway company observed the requirements of the statutes with reference to sounding the steam-whistle at least 80 rods from the crossing, to which ruling the plaintiff duly excepted. No attempt was made to show any other negligence in the management of the train.

The defendant's depot is located on the northwest quarter of section 18, township 6, range 16, in Jackson county, and its right of way and railroad track traverses diagonally that quarter-section, the northwest corner of the northeast quarter of the same section, and the southeast quarter of section 7, which joins section 18 on the north. Between these sections, 18 and 7, there is a duly established public highway 40 feet in width, which is also traversed by defendant's right of way and railroad track ; the dis-

tance from the depot to a point where the railroad track crosses the highway is about 1,200 feet, and, in addition to the main track, the defendant had constructed a switch, or what is termed a "passing track," about 13 feet distant from the main track, and parallel thereto, extending from a point several feet southwest of the depot across the highway to a point 200 or 300 feet north of the south line of the said southeast quarter of section 7, where this passing track is joined to the main track; and 125 feet beyond that point was a cattle-guard to prevent live stock from getting upon the track and right of way. The railroad company introduced evidence tending to show that that part of the highway which was traversed by the right of way, the main track and passing track was a part of the depot- and switch-grounds of the company as located by it; that the depot was located at a suitable place for the accommodation of the public and for the management of the business of the defendant; that five trains passed at that station daily; that much of the local switching of cars is done there; that as many as five trains had been there at a time; that it was necessary, in order to properly discharge its duties to the public, in the management of its business, that the depot-grounds and switch-yards, including its passing track, should extend over and across the public highway, and that it could not construct and maintain a fence or cattle-guard on either side of the highway, across its right of way, without endangering the lives of its employes while engaged in doing the necessary switching of trains at that station. The jury returned a general verdict in favor of the defendant, and made the following special findings of fact:

"Was there anything in the lay of the land, or

otherwise, to interfere with or prevent the defendant from the erection of cattle-guards or other barriers at the place where its road enters said land of Smith where the animals of the plaintiff went upon said right of way?    Yes.

"Could the defendant have constructed and maintained a cattle-guard at the point where the railroad enters the south line of the land owned by Leonard T. Smith without thereby endangering the lives of its employees?    No."

The plaintiff in due time filed his motion for a new trial, in which he alleged that the verdict was not sustained by sufficient evidence and was contrary to law, and that errors of law occurred at the trial to which the plaintiff duly excepted.    The hearing of this motion was continued until the next term of court, and, pending the hearing, the plaintiff asked leave to amend his petition, which application was also continued until the next term, at which time both motions were allowed.    The plaintiff then filed his amended petition, in which, after referring to all the allegations of the original petition, and making them a part of the amended petition, alleged in substance, "by way of conforming the said petition to the facts proved," that the highway, across which the track ran diagonally, existed long prior to the construction of the railway, and that the station limits, depot and tracks in the vicinity of the highway were established and constructed in disregard of the needs, convenience and safety of the public and to property, and were not justified by the exigencies of the railway service; "and that, by reason of the premises aforesaid, the live stock of the plaintiff going upon the said right of way as aforesaid without the plaintiff's fault were killed," etc.

The journal entry (omitting the caption) reads:

"This day this cause came on for hearing upon

the motion filed by plaintiff to amend his petition herein, and also upon the motion of the plaintiff for a new trial, and the court, after hearing arguments of counsel, and being fully advised in the premises, grants leave to the plaintiff to file an amendment to his petition herein instanter, which is done; to which ruling and decision of the court the plaintiff at the time duly excepted; and, thereupon, the court sustained the application of the said plaintiff for a new trial herein, and set aside the verdict and findings of the jury originally rendered in this action, to which ruling and decision of the court the said defendant at the time duly excepted; and thereupon, for good cause shown, the said defendant is granted 40 days herefrom in which to make and serve upon the plaintiff herein a case-made for the supreme court, and this cause is continued until the next term of this court."

The defendant has brought the case here, complaining of the ruling of the court in allowing the plaintiff, after trial and after a verdict had been rendered, to file an amendment to his petition, and then granting a new trial.

*M. A. Low*, and *W. F. Evans*, for plaintiff in error.
*James H. Lowell*, for defendant in error.

The opinion of the court was delivered by

CLARK, J.: The record shows that the amendment to the petition was allowed "in order to conform the petition to the facts proved," but, even if the original petition had contained all of the allegations of the amended petition, the jury could not, under the evidence, have found otherwise than in favor of the defendant. How, then, can it be said that the amendment conformed the petition to the facts proved? It might with much more propriety be said that the al-

legations of the amended petition were clearly contro-
verted by the evidence.    If the question presented by
the amendment could be properly litigated in a case
of this kind, the plaintiff in error ought not to com-
plain that this amendment was allowed, as the rail-
way company, over the objection of the defendant in
error, introduced evidence tending to rebut the allega-
tions of the amended petition.    But we do not think
the question presented by this amendment could be
properly litigated in this action.    The right of locat-
ing the railroad, the depot, the depot-grounds, the
switch and passing tracks was vested by law in the
railroad company in the first instance.    The act of
location was not void, and if it was voidable the state
only could call the company to account for it.  (Wood,
Railway Law, § 227 ; *Railroad Co. v. Young*, 33 Pa. St.
175 ; *Railroad Co. v. Speer*, 56 id. 325 ; *Railway Co. v.
City of Joliet*, 79 Ill. 25 ; *Railroad Co. v. Dunbar*, 100
id. 110 ; *McGrath v. Railroad Co.*, 24 N. W. Rep. 854.)

While we think the court erred in allowing this
particular amendment to the petition, and while we
would not hesitate to reverse the decision of the trial
court in granting a new trial, if it clearly appeared
from the record that a new trial was granted solely to
enable the plaintiff below to introduce evidence in
support of the allegations of negligence which were
not included in the original petition, still it must be
remembered that the grounds set up in the motion for
a new trial are that the verdict was not sustained by
sufficient evidence and was contrary to law ; and
that errors of law occurred at the trial to which the
plaintiff duly excepted ; and, for aught that appears
in the record, the court may have granted the new
trial partly on these grounds.    The defendant in error
insists that the court erred both in the admission and

rejection of evidence offered at the trial, and that, although it may be said the verdict as returned is sustained by the evidence, the findings were influenced by the errors of the court in the admission of evidence. We think under the circumstances of this case, the court properly ruled that it was immaterial whether the defendant did or did not sound the steam-whistle at least three times 80 rods from the crossing. There was no proof that any one was in charge of the stock, nor as to whether they were on or off the railroad-track, or on the highway, at the time the train was 80 rods from the crossing. The failure to comply with the statute would not render the company liable to the owner of the stock injured unless it was shown that the injury resulted from a failure to comply with the statute in this respect. The supreme court of Indiana, in *Railway Co. v. Green*, 22 N. E. Rep. 327, in construing a statute similar to our own, said :

"It is, manifestly, not the object or purpose of the statute to require this signal for the purpose of frightening animals which may chance to stray upon the crossing, as the law does not permit cattle to run at large in the highways of the state ; and the presumption is that none will be upon the highway ; and if they were would no doubt be as liable to become frightened at the approaching train as by the signals required.  .  .  ."

The court in that case says it cannot presume, or the inference cannot be drawn,

"that the cow remained on the track notwithstanding the noise of the approaching train, the ringing of the bell, and shining headlight of the engine coming at a rapid rate of speed toward her, but if the whistle had been sounded she whould have left the track and avoided instant death."

The plaintiff having established his ownership of the

stock, and the injury resulting from their contact with a passing engine on the right of way at a place other than a public highway, which the defendant had not inclosed with a good and lawful fence to prevent animals from being thereon, in order to defeat a recovery it devolved upon the railroad company to show either contributory negligence on the part of the plaintiff or that it was not required to inclose its track at the particular place where the animals entered its right of way from the highway. The jury found that the plaintiff was not guilty of negligence contributing to the injury.

The defendant propounded to several of its witnesses the following question:

"State whether or not the cattle-guard could be constructed or maintained at the point where the railroad intersects the south line of the L. T. Smith land, on the north side of the highway, without endangering the lives or limbs of railroad employees."

The court, over the objection of the plaintiff, permitted the witnesses to answer the question, and an exception was saved to the ruling of the court. The jury were instructed that if the defendant located its depot at a suitable place, and it was necessary that it should construct its main track and passing track across the highway in order to properly manage its business in the public interest, it would have a right to do so; and that if a fence or cattle-guard along the margin of the highway could not be constructed without interfering with the safe management of the trains with reference to the employees of the railroad company, the law would dispense with such fence or cattle-guard at that place; and that it was for the jury to determine whether or not the passing track was properly constructed — was of proper length for the

convenient operation of the railroad with reference to the public interest — and if it was, that then they should determine from the evidence whether it would have been proper for the defendant, in view of all the circumstances of the case, to have constructed a fence or cattle-guard on the north side of the highway ; and that would depend on the determination of the question as to whether a fence or cattle-guard at that place would have interfered with the safe management of the trains with reference to the employees of the railway company. It will thus be seen that, under the instructions, the main question to be decided by the jury was one upon which witnesses were allowed to express an opinion. The witnesses had not shown any peculiar qualifications to testify upon this question, except that they were railroad employees, including a civil engineer, brakemen, locomotive engineers, and a station-agent. In fact, it required no special skill or training to ascertain whether a cattle-guard at the place in question would have been dangerous to defendant's employees. It is not apparent why these witnesses could not have testified as to the manner of the construction of cattle-guards, the location of the tracks, the uses made of them, and stated any other fact which would tend to show that a cattle-guard across or under the tracks in the station grounds, or switch yards, or at the particular place in qestion, would be dangerous to employees of the railway company, and the jury, upon such testimony, would have been able to draw reasonably correct conclusions with reference thereto without the aid of the opinions of the witnesses. "If the relation of facts and their probable results can be determined without special skill or study, the facts themselves must be given, and the jury left to draw conclusions

47—2 APP.

or inferences." (*St. L. & S. F. Rly. Co. v. Ritz*, 33 Kan. 404.) In *Railway Co. v. Modesitt*, 24 N. E. Rep. 986, the supreme court of Indiana held that, for horses killed by getting upon the railroad-track at a crossing where no cattle-guard was maintained, the evidence of a witness that a cattle-guard could not be maintained there without injuring defendant's employees was properly excluded, the court saying the railway company "was entitled to prove the condition of the tracks, their location, the use made of them, and like facts ; but it was not entitled to the opinion of a witness that the construction of a cattle-guard would make the use of the tracks dangerous." In *Railway Co. v. Hale*, 93 Ind. 79, which was an action to recover damages for killing a horse, the evidence tended to show that the animal was killed by a freight-train on the railroad. The principal contention was whether the railroad could have properly been fenced at the place where the horse entered upon the track and was killed. The court held that it was not competent to take the opinion of witnesses, but that the jury must be left to decide that question upon the facts proved. See, also, *Bliss v. Wilbraham*, 8 Allen, 564 ; *Muldowney v. Railway Co.*, 36 Iowa, 462 ; *Railroad Co. v. Zumbaugh*, 39 N. E. Rep. 1058 ; *Montgomery v. Scott*, 34 Wis. 345 ; *Stillwater v. Coover*, 26 Ohio St. 520 ; *Couch v. Railroad Co.*, 22 S. C. 557 ; *Railroad Co. v. Greeley*, 23 N. H. 237 ; *City of Topeka v. Sherwood*, 39 Kan. 690 ; *City of Junction City v. Blades*, 1 Kan. App. 85.

For the reasons assigned, the order allowing the amendment to the petition will be reversed, while the order granting a new trial will be affirmed.

All the Judges concurring.