THE NIAGARA FIRE INSURANCE COMPANY OF THE CITY OF NEW YORK v. H. F. JOHNSON.

### No. 68.

1. FIRE INSURANCE—"*Dwelling*" *Defined.* Where a building covered by a policy of fire insurance is therein designated a "dwelling," the use of that term will be construed as descriptive of the property insured, and not a warranty that the building is then being occupied as a dwelling-house.

2. ——— *Proof of Increase of Hazard Must Be Shown.* Where a policy of fire insurance contains a stipulation that "this entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if any change other than by the death of an insured take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured or otherwise," in order to defeat a recovery thereon on the ground that the building insured was thereafter used or occupied for a club-house without its consent, it devolves upon the insurer to show that the hazard was in fact increased by such use or occupancy.

3. ——— *Additional Insurance—Estopped by Notice.* Where an insurance company had notice at the time the policy was issued of the existence of additional insurance, it is estopped, in an action on the policy, from setting up a violation of a clause therein prohibiting prior additional insurance without its assent.

MEMORANDUM.—Error from Wyandotte court of common pleas; T. P. ANDERSON, judge. Action by H.

F. Johnson against The Niagara Fire Insurance Company of the City of New York to recover on a policy of insurance. Judgment for plaintiff. Defendant brings the case to this court. Reversed. The opinion herein, filed July 9, 1896, states the material facts.

*Hiram Stevens*, and *Fyke, Yates & Fyke*, for plaintiff in error.

*McGrew, Watson & Watson*, for defendant in error.

The opinion of the court was delivered by

CLARK, J. : This is an action brought by H. F. Johnson to recover upon a policy of fire insurance issued to him by the Niagara Fire Insurance Company of the City of New York. The defendant, as plaintiff in error, is here seeking a reversal of a judgment rendered in favor of Johnson. The assignments of error include various rulings of the trial court upon the admission of evidence, in giving certain instructions to the jury, in refusing to enter judgment in favor of the defendant on the special findings of fact, and in overruling the motion for a new trial.

This policy was executed on December 6, 1889, and a portion thereof reads as follows :

" The Niagara Fire Insurance Company of the City of New York, in consideration of the stipulations herein named and $16\frac{80}{100}$ dollars premium, does insure H. F. Johnson for the term of three years, from the 6th day of December, 1889, at noon, to the 6th day of December, 1892, at noon, against all direct loss or damage by fire, except as hereinafter provided, to an amount not exceeding $1,800, to the following-described property while located and contained as described herein and not elsewhere, to wit : $1,800 upon his two-story brick shingle-roof dwelling with rock basement, located north end of lots 1 and 2, block 64, Wyandotte city, now Kansas City, Kan."

The policy also contained numerous printed stipulations and conditions, but the following are the only ones that are deemed material to the present inquiry :

"The entire policy, unless otherwise provided by agreement entered hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or void, on property covered in whole or in part by this policy ;   .   .   . or if the hazard be increased by any means of insurance, whether valid or void, on property covered in whole or in part by this policy ;   .   .   . or if the hazard be increased by any means within the control or knowledge of the insured ;   .   .   . or if any change other than by death of an insured takes place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process, or judgment, or by voluntary act of the insured, or otherwise.   .   .   . This policy shall be canceled at any time at the request of the insured, or by the company giving five days' notice of such cancellation.   .   .   . This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto ; and as to such provisions and conditions, no officer, agent or representative shall have power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto ; nor shall any privilege or permission affecting the insured under this policy exist or be claimed by the insured unless so written or attached."

The defendant in its answer admitted execution of the policy, and alleged that the conditions hereinbefore named had been violated by the insured, and

that, by reason thereof, the policy had become void long prior to the destruction of the property by fire. It alleged that at the time the policy was issued, as well as at the time of the fire, the plaintiff had other insurance on the building to the amount of $1,500; that the building was insured as a dwelling-house, and that thereafter, with the knowledge of the plaintiff, the risk covered by the policy was increased by the use and occupancy of the building as a gambling-house; that at the time of the fire it was vacant and unoccupied as a dwelling-house, and had been in that condition for a long time prior thereto; that the risk was also increased after the policy was issued by the execution by the plaintiff of a mortgage on the property in the sum of $600, and that the same was an incumbrance thereon at the time of the fire; and that no consent had been given by the defendant, in the manner prescribed by the policy or otherwise, for such additional insurance, or for the use or occupancy of the building for any other purpose than as a dwelling-house, or that the property should be incumbered by mortgage.

The plaintiff in his reply denied the several allegations of the answer, and averred that, if the facts should be found to exist as therein alleged, the defendant had duly waived compliance with the several requirements of the policy above mentioned.

The record shows that Mr. Bigger, who issued the policy, was the duly constituted agent of the company, and, as set forth in his commission, had

"full power to receive proposals for insurance against loss and damage by fire in Kansas City and vicinity, to fix rates of premium, to receive moneys for the same, and to countersign, issue, renew and consent to the transfer of policies of insurance, and to make indorsements thereon, or to vary the risk."

The jury specially found that at the time the policy was issued the property was insured for $1,500, and while the defendant gave no written consent for such additional insurance, its agent had notice thereof at the time he issued the policy. The evidence as to the agent's knowledge of the additional insurance was conflicting, but the finding is supported by the testimony of the plaintiff. As the agent had notice at the time he issued the policy that the building was already insured for $1,500, the defendant was estopped from denying its liability on the ground that written consent for such other insurance was not indorsed on the policy. (*Rockford Ins. Co. v. State Bank*, 50 Kan. 427; *Capitol Ins. Co. v. Bank of Pleasanton*, 50 id. 449.)

The jury also found that after the policy was issued the building was used or occupied for schoolrooms and a club-house, and the plaintiff in error insists that, as no written consent for such occupancy was indorsed on the policy, the latter thereby became void. It will be observed that the policy itself contains no warranty that the building should be occupied in any particular manner, nor does it recite the character of its occupancy at the time the policy was issued; but the jury also found that the agent had notice at the time the policy was written that the building was then used for school purposes, and that it was the understanding between the plaintiff and the agent that as soon as the building ceased to be used for a schoolhouse it was to be used and occupied as a dwelling-house. We do not think that this finding should be construed as a warranty on the part of the insured as to the future occupancy of the building. The contract as entered into between the parties was reduced to writing, and is evidenced by the policy itself. Unless the terms of the contract were subse-

quently modified, or compliance with its provisions or some part thereof was waived, or a party thereto was for any reason estopped from taking advantage of some provisions therein inserted for its benefit, the liabilities of each to the other should be measured by that instrument. (*Insurance Co. v. Mowry*, 96 U. S. 544.) The building insured is described in the policy as a "dwelling." We think this word, as there used, should be construed as merely descriptive of the building itself. (1 Wood, Fire Ins. §93.) Courts are not disposed to favor a warranty by construction, and if the terms used are fully satisfied as a description they will not be extended to include a warranty, unless it is clearly expressed that such was the design and meaning of the parties. (*Insurance Co. v. Kimberly*, 34 Md. 224.)

The jury also found that the plaintiff executed a mortgage upon the property insured, after the policy was issued, to secure certain indebtedness, but that this was done with the consent of the defendant, although the evidence thereof was not indorsed on the policy. This finding is evidently based upon the evidence that the mortgage was prepared by Bigger to secure a loan of $600, made by him as agent for the mortgagee, and the testimony of the defendant in error that, at the time this loan was procured, he handed to Bigger the policy here sued upon, together with one for $1,500 on the same building, and one for $1,800 on a building situated on the rear end of same lots, and that Bigger retained the last-named policy as collateral security for the loan and returned the others to him. This finding was also evidently influenced by the instructions of the court that the execution of the mortgage rendered the policy null and void, unless the jury should find "that the agent, W.

H. Bigger, who issued the policy sued upon was a general agent of the defendant company, and that he had actual knowledge of such mortgage ; in such an event the policy would not be rendered void by the reason of such mortgage.'' We do not think that the mere fact that the agent who negotiated the loan was also the agent of the insurance company would, of itself, estop the latter from setting up the defense that the policy had become void by reason of the execution of the mortgage without its consent. The knowledge thus acquired by the agent, while transacting the business which was in no way connected with the agency, did not bring this case within the rule that notice to the agent is also notice to the principal ; but even if it should be held otherwise, mere notice of the subsequent incumbrance of the property was not sufficient to warrant the court in giving the above instruction. (*Johnson v. Insurance Co.*, 1 Camp, [N. Dak.] 167, 43 N. W. Rep. 59 ; *Robinson v. Association*, 29 id. 521 ; *Golden v. Assurance Co.*, 46 Minn. 471.) This ruling would apply with equal force to the latter part of the second instruction, given at the request of the plaintiff below, that if the jury found that the risk was increased after the policy was issued, '' and the agent had knowledge of it, this would excuse the breach.''

The jury also found that at the time of the fire, and for more than a month prior thereto, this building was occupied as a dwelling-house by Henry Reed and W. H. Tillman. The evidence is uncontradicted that, about the 1st of April, 1890, Johnson rented this building to Reed. Arrangements were at that time made whereby Johnson should put the building in suitable condition for the use of a club-room, and that Reed should pay him monthly rental of $50, but, as Reed

would not be ready to "open up" until later in the year, it was agreed between them that he should only pay $25 per month until the contemplated alterations should be made. Reed went into possession, and moved into the building some billiard- and pool-tables billiard cues, and a rack for the same, a few chairs, a sideboard, three small tables, and a cot. This constituted the entire furniture in the building from the 1st of April to the date of the fire, except a few articles which belonged to Johnson and which were stored in the basement. The evidence shows that gambling was being carried on at this place once or twice a week during such occupancy. Johnson testified that, while he had seen parties playing cards at the table, he had no knowledge that gambling was allowed in the building until after the place was "raided" by the police officers, about a month before the fire, and that he immediately notified his tenant that such use of his property must cease. He also testified that

"before the raid, I have frequently seen a crowd of men around there, but after that I did n't. After the raid was made you would hardly see during the day more than one or two besides the ones that kept or occupied the building. They stayed away from there. They shot in among some of them ; they shot at one outside, or rather shot him, and there was no more gathering of them."

It also appears from the evidence that a man by the name of Tillman assisted about the premises, and that some one slept on a cot in the building on an average of four nights a week from the 1st of April to the time of the fire. Both Reed and Tillman were unmarried. No meals were served in the building during the time it was occupied by them, but, prior to the "raid," sandwiches — that were purchased outside — were occasionally furnished to the guests. This

is all the evidence introduced tending to show that the building was occupied as a dwelling-house by Reed and Tillman at the time of the fire, and it is wholly insufficient to support such finding. ( 1 Wood, Fire Ins. § 83 ; *Ashworth v. Insurance Co.*, 112 Mass. 422 ; *Bonenfaut v. Insurance Co.*, 43 N. W. Rep. [Mich.] 682.)

In answer to the contention of the plaintiff in error, that as the policy provided that no agent, officer or other representative of the company had any power to waive any of the conditions of the policy except by written indorsement thereon, the insured was bound by notice therein conveyed of the limitations upon the powers of the agent, it need only be said that, as Bigger was a general agent of the company and had specific authority to " vary the risk," the rule laid down in *German Ins. Co. v. Gray*, 43 Kan. 497, has direct application to the facts in this case   It was there held that " a general agent of an insurance company can modify the insurance contract or waive a condition of a written policy by parol," and that " a provision in an insurance policy respecting incumbrances on property insured may be waived by the insurance company or its general agent ; and this, although the policy contains a printed stipulation that no agent of the company or any person other than the president or secretary shall have authority to waive any of the terms or conditions of the policy, and all agreements by the president or secretary must be signed by either of them." The court there cited with approval *Insurance Co. v. Earle*, 33 Mich. 143, where it was held that, although the policy contained such a condition therein, " a written bargain is of no higher legal degree than a parol one. Either may vary or discharge the other, and there can be no more force in an agree-

ment in writing not to agree by parol' than in a parol agreement not to agree in writing.    Every such agreement is ended by the new one which contradicts it.''

Plaintiff in error also calls attention to several errors committed by the trial court in the admission of evidence, but as many of these were unimportant, while some of the others could not have influenced the jury in their determination of the issues involved in this action, and still others, that were material, will probably not occur in another trial, we do not deem it necessary specially to consider them.    The principal objection, however, that is raised by the insurance company is to the refusal of the court to allow a witness to testify as to whether the existence of certain specific facts would increase the rates of insurance upon the property insured.    We cannot say that the court erred in sustaining the objection to such question.    As was said in *Joyce v. Insurance Co.*, 45 Me. 168, "such a question calls for the opinion of the witness upon the influence certain facts would have upon others, and whether they would be induced thereby to charge higher rates of premium, and is inadmissible, as the inquiry did not relate to matters of science and skill.'"    See, also, *Lyman v. Insurance Co.*, 14 Allen, 329 ; *C. R. I. & P. Rly. Co. v. Clonch*, 2 Kan. App. 728, 42 Pac. Rep. 1140.

We think the court erred in overruling the motion for a new trial, not only because some of the findings of fact were not supported by the evidence, but also because the court erred in its rulings upon the admission of some of the evidence offered, and in giving certain instructions to the jury.

The judgment will, therefore, be reversed, and the cause remanded for a new trial.

All the Judges concurring.