GILLETTE MOTOR TRANSPORT, Inc.,
v. KIRBY.

No. 34333. Nov. 18, 1952.

Rehearing Denied Feb. 10, 1953.

253 P. 2d 139.

Banker & Bonds, Muskogee, for plaintiff in error.

Wilkerson & Wilkerson, Pryor, for defendant in error.

PER CURIAM. The petition alleged that the plaintiff was the administratrix of the estate of the deceased husband who was killed in a collision between a Chevrolet truck being operated by him on the night of August 8, 1947, at about 10:30 p.m., approximately 1.6 miles north of Adair, Oklahoma, on U. S. Highway 69; that the deceased was 26 years of age and earning from $240 to $300 per month and was then engaged in driving his Chevrolet truck at such place from a trip delivering watermelons to some place in Kansas and was returning home, his residence being in Texas, where his family was residing. At the point of collision a truck owned by the defendant, Gillette Motor Transport, Inc., was being driven in a northerly direction on the highway by an employee of the defendant, Charles Leslie Marshall, who was driving such Gillette truck having a trailer thereon, loaded and going in a northerly direction when the two trucks, the Chevrolet operated by the deceased, Carroll O. Kirby, and the Gillette truck, operated by said Marshall, collided or came together on said highway north of Adair, Oklahoma. The evidence indicates that the highway was concrete, 20 feet in width, and had a black center line or marker running up and down the highway. That it was a clear night and the pavement was dry; that U. S. Highway 69 runs north and south in a straight line and there were no curves at or near the point of collision. The only witness available who saw or testified to seeing the collision was the driver of the defendant's truck, Marshall, who was produced by the defendant. The witnesses for the plaintiff were the wife of the deceased, Vestal Kirby, residing in Texas; a brother-in-law, Darris Lyons, residing in Texas; A. D. Kirby, a brother of the deceased, residing in Texas; and C. G. Talfarrieo, a brother-in-law of deceased, residing in Texas, all of whom came to the scene of the collision the day following; also, a photographer, Mrs. E. J. Burnett, who was at the scene the day following; also, Howard Hill, the highway patrolmen who responded to the call of the collision on the night it occurred, and as such investigated the collision; also, J. S. Lane, who lived about 4½ miles from the scene of collision and who was on the scene the day after the Chevrolet truck had been moved.

Also, plaintiff produced H. D. Lyons, a brother of the brother-in-law, Darris Lyons, in rebuttal, covering a conversation with C. L. Marshall about the 12th of August, 1947.

The defendant produced as their witnesses Howard Hill, the highway patrolman who appeared on the scene at 11:15 p.m., August 8, 1947; Howard Davison, a dispatcher and claim agent of the defendant, and C. L. Marshall, the only living person who could testify as to what transpired from his own observation or knowledge prior to and at the time of the collision.

The plaintiff's pleadings and position on the trial were the necessity of proving actual or primary negligence by sufficient legal evidence to permit a reasonable man or men to determine if the collision was primarily caused by the negligence or want of care of the defendant. The defendant pleaded a denial of negligence and contributory negligence and want of care on behalf of the deceased and that the deceased was at the time of the collision on the "wrong side" or "east side" or the "Gillette side" of the highway. A determination of this issue if properly arrived at would largely control the correctness or incorrectness of the verdict and judgment.

The plaintiff was permitted, over objections, to testify and to produce a certain card, referred to as plaintiff's Exhibit 1, by reading into the evidence that deceased had been employed by

the Halliburton Oil Well Cementing Company prior to this collision resulting in death and that the card was read to the jury:

"Halliburton Oil Well Cementing Company awards this certificate of appreciation to Carroll Otto Kirby, who drove a company vehicle without chargeable accident one year, from Feb. 21, 1946 through Feb. 21, 1947. Award given Feb. 21, 1947, with current safety program."

The trial court, in our opinion, committed error in permitting testimony by the wife, Vestal Kirby, that her husband was a careful driver and in permitting, over objection, introduction in evidence of the certificate awarded from a previous employer that the deceased was given such award for having been theretofore a careful driver. The court also committed error, in our opinion, in permitting the witness Talferreio, the brother-in-law of the deceased, to testify that the deceased was a careful, painstaking driver and was a very good driver and always wanted to drive ever since he was a child. The rule of law is:

"If there was an eyewitness to a fatal accident, evidence of the deceased's careful habits is not admissible in a death action, ***." Blashfield, Cyc. of Automobile Law, vol. 9, p. 640, §6193.

See, also, Scally v. Flannery, 292 Ill. App. 349, 11 N. E. 2d 123; Moore v. Bloomington D. & C. R. Co., 295 Ill. 63, 128 N. E. 721; Starr v. Los Angeles Ry. Corp., 187 Cal. 270, 201 P. 599; Gorman v. County of Sacramento, 92 Cal. App. 656, 268 P. 1083; also:

"Testimony of general habits of carefulness is too remote to raise the presumption that they have been exercised in any given case." City of Junction City v. Blades, 1 Kan. App. 85, 41 P. 677.

Generally, the courts hold that evidence of careful habits of one injured by another's negligence is not admissible to show care at the time of the injury. 15 A.L.R. 127, citing numerous cases.

The wife also testified that her husband was earning from $240 to $300 per month. The wife further testified that the shoes her deceased husband had on when she last saw him were "kind of a blunt toed slipper and listed slightly. The springs were all broken up in them, and one shoe had an awful scar across the toe of it."

Darris Lyons, a brother-in-law of deceased, testified that he had known the deceased for eight years; that he married deceased's sister and deceased was hauling watermelons for him, and over objections testified the deceased was a careful, painstaking driver, and that he was a perfect driver. He also testified that the west-hand side of the road was higher than the east side of the road and he also testified that he saw a set of marks on the "east side running northeast."

A. D. Kirby, brother of the deceased, testified that he saw track marks made by the Gillette truck on the east side of the road the next day.

C. G. Talfarrieo, a brother-in-law of deceased, testified that he knew deceased for fourteen years and testified, over objections of defendant, that deceased was a careful, painstaking driver and was a very good driver from seeing him drive and he always wanted to drive ever since he was a child.

Howard Hill, highway patrolman, testified that he arrived at the scene of the accident at 11:15 p.m., and that the Chevrolet truck was found by him 35 feet from the point of impact, which point of impact was 42 inches to the left or east side of the road. Mr. Hill also testified that he measured this distance himself.

It was stipulated that the funeral bill incurred was $700.

J. S. Lane was called for plaintiff. He said he lived 4½ miles from Highway 69 and that he saw some clay on the west side of the center line of the highway.

Plaintiff rested and defendant demurred to the evidence.

The court observed, "Under the rule of inferable evidence, the jury might infer negligence. I will overrule the demurrer." The court then stated: "It is awful close." The court further observed:

"You have this situation here: The man that would know about it he is gone, he has passed out and the only thing here is the circumstance of the accident, and it may be fairly stated that the only rule of evidence there on behalf of the plaintiff, is the fact that there was an accident; the trucks came together under such circumstances it might have been the fault of one and might have been the fault of the other, or might even be the fault of both, or where the jury might never believe this evidence, and for the purpose of the demurrer, it is taken as true that the truck did pull over to the left of the highway according to the physical facts, so under that slight authority there, I will overrule the demurrer to the evidence."

Thereupon, the defendant called Howard Hill, the highway patrolman, as its witness, and he testified that he arrived at the scene at 11:15 p.m.; that the weather was fair; that it was a concrete highway, 20 feet wide; that the bumper and axle of the Chevrolet made a mark on the pavement and the mark started where the wheel was broken down and it was 42 inches to the east of the black line where the impact was; that from the cut place in the highway, you could tell what caused it; that there was a bumper mark and that the cut place was definitely 42 inches east of the black line. The highway patrol man further testified that the decedent's shoes were part off; that the throttle on the dash board was pulled out; that there was a foot feed on the truck; that he swept the glass and other debris off himself that night; that he showed the relatives the next day the point where the accident happened and the point of impact; that he has no interest in the case.

Howard Davison testified that he was a dispatcher and claim agent for defendant, and that Marshall, the truck driver, had been with the company for 18 years and worked out of Muskogee and that his record showed that Marshall left Muskogee the night of August 8, 1947, at 8:30 p.m.

C. L. Marshall testified that he lives in Muskogee; that he was driving for Gillette and had been driving for them 11 years; that he had gotten into Muskogee the previous morning at 4:30 a.m. and rested all day at home; that he was driving an International tractor with a Fruehauf trailer; that he was driving in a northerly direction, about 1.6 miles north of Adair on the night of August 8, 1947; that there was a rise on the highway; that the deceased was about straddling the black line and swerved back over and the next thing he cut around; that Marshall was on the east side of the black line; that Marshall was about 1½ feet over the black line on the east side of the highway when the impact started; that to be exact, at the time of the impact he was 42 inches to the east side of the black line in the center of the highway upon which he was traveling; that when deceased hit Marshall's truck, deceased's truck bounced across the highway about 135 feet before it came to a stop; that Marshall's equipment stopped about 90 feet from the point of impact; that he had left Muskogee about two hours before, almost to a minute; that the distance covered was 54 miles in two hours, or an average of about 27 miles an hour; that he just had his motor overhauled and he never rushed an overhauled job; that when the Chevrolet turned in his direction it was 15 or 20 feet from Marshall; that he, Marshall, turned sharply to the right to avoid the accident; that the right front wheel of the Gillette tractor was already off of the pavement when they first touched; that the Gillette truck was loaded that night with around 14,000 or 16,000 pounds; that before the Chevrolet turned towards Marshall it was on the west side of the line going south to the lefthand side.

That the witness does not remember how deceased was dressed except that he was in his sock feet and that the Chevrolet truck had a gas throttle feed.

Darris Lyons, on rebuttal, testified he talked to Marshall about four or five days later and that Marshall said he first saw the Chevrolet truck about half a mile coming and he thought it was astraddle of the mark and he got about 150 yards and he saw it over on his side of the road, and when he got within 15 feet, he, Marshall, saw that his truck was headed towards the other truck and jerked it to the right and fell over to the side.

Defendant rested, the evidence closed. Defendant demurred to the evidence as insufficient. The court observed, "It is a pretty close question, but I will overrule it." After instructions and argument the jury retired and brought in a nine-man verdict for $6,500. Upon the verdict being presented, defendant requested judgment notwithstanding the verdict. The court thereupon again observed, "Unless a general demurrer would be sustained, you can't render a judgment notwithstanding the verdict, but I still have some serious doubts as to whether or not there is any primary negligence."

A motion for new trial was duly filed containing six usual assignments of error, and on April 29, 1949, same was overruled and the customary notice and requirements of appeal were taken.

Taken as a whole, after completely appraising all of the evidence and the proceedings on the trial, we are forced to the conclusion:

(1) That there was an eyewitness to the collision, C. L. Marshall, and although he was an employee of the defendant, nevertheless, this did not thereby remove him as an eyewitness.

(2) That since there was an eyewitness to the fatal accident, evidence of the deceased's careful habits is not admissible in a death action. Blashfield, Cyc. A.L. vol. 9, §6193.

(3) That testimony of the general habits of carefulness is too remote to raise a presumption that they have been exercised in any given case. City of Junction City v. Blades, supra.

(4) That the reading into the record of a certificate of award of carefulness by a former employer for a prior period was detrimental, inadmissible and erroneous.

(5) That the general over-all complexion of the case shows, as the trial judge himself had so well observed, besides the fact of an accident or collision at this point, if you remove the entire evidence of the only living witness to the collision, Marshall, there would be no resulting direct evidence, except through inferences upon inferences. The plaintiff, at most, merely proved there was a collision by certain black marks and gray marks and debris and proved that the highway officer swept off the highway shortly after the collision; that the highway officer testified that there were certain indentations, scratch marks, etc., in the pavement, not merely black or gray marks, but actual cuts or indentations made from the axle or drum of the front left portion of the Chevrolet, and that such point of contact of the two trucks was 42 inches east of the center mark on the highway, and that he showed these marks or indentations the next day to the relatives of the deceased. That it is undisputed by the wife's testimony, by the highway patrolman, and by Marshall, that the deceased had some broken shoes, and the latter two testified that the deceased had been driving the Chevrolet truck in his sock feet. It is also undisputed that the Chevrolet immediately after the collision showed it was being driven by the dashboard gas throttle instead of by the foot feed. All of the testimony, therefore, even if you remove from the record the testimony of the eyewitness Marshall, still leaves inferences upon inferences that would be necessary to attenuate before one could come to a definite conclusion that the deceased was not at fault. The burden

of proof is upon the plaintiff to prove negligence on the defendant's side, as well as nonnegligence on the plaintiff's side, before reasonable men could draw the conclusion that the collision was caused primarily and by any fault of the defendant.

(6) As stated in Highway Constr. Co. v. Shue, 173 Okla. 456, 49 P. 2d 203, and as quoted in Buxton v. Hicks, 191 Okla. 573, 131 P. 2d 1015:

"Is there evidence to sustain the conclusion of greater probability that the injury came in whole or in part from the defendant's negligence than from any other cause?"

In fact, the rule in the case of Highway Constr. Co. v. Shue, supra, goes one step further and says:

"There must be evidence to sustain a conclusion that there is a greater probability that injury came in whole or in part from such negligence than from any other cause."

In the case of Prest-O-Lite Co. v. Howery, 169 Okla. 408, 37 P. 2d 303, it is said:

"A verdict must be said to be based on speculation and conjecture when, after considering all the evidence favorable to plaintiff, together with all inferences to be reasonably drawn therefrom, and excluding all evidence favorable to defendant, all unprejudiced minds must agree, from the facts and circumstances in evidence, that any one of several conclusions consistent with nonliability of defendant may as reasonably be drawn therefrom as is the conclusion of liability under plaintiff's theory of the case."

(7) Applying the over-all principles of law and an affirmative effort to do justice to all parties, one can readily see why the record in this case shows that the court made not less than four definite observations from the beginning to the end of the case that the court was in a definite state of uncertainty, and we believe justly so, to the extent of inferences upon inferences before any verdict could have been given for the plaintiff. It is difficult to reconcile the verdict being rendered in the sum of $6,500, for the life of a young man, 26 years of age, having an expectancy of 38 years, and with a $700 funeral bill and a $300 per month earning capacity by a nine-man verdict, if sufficient primary evidence was presented for plaintiff to justify a verdict in favor of plaintiff.

For the reasons above stated, we do believe that the court committed material error and that the order and judgment should be reversed, and a new trial granted.

This court acknowledges the services of Attorneys George H. Bowen, Hess Crossland and Samuel A. Boorstin, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.

WELCH, CORN, GIBSON, O'NEAL, and BINGAMAN, JJ., concur.