# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## Iva Ellett Cheatwood, Adm'r, Etc. v. Virginia Electric and Power Company, a Corporation, Etc.

January 19, 1942.

Record No. 2421.

Present, All the Justices.

The opinion states the case.

*Leith S. Bremner* and *Robert Lewis Young,* for the plaintiff in error.

*T. Justin Moore* and *Archibald G. Robertson,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This action was brought to recover compensation for the death of Mrs. Callie L. Ellett, who died from injuries sustained when she was struck by a street car owned and operated by the Virginia Electric and Power Company. The jury returned a verdict in the sum of $5,000 for the plaintiff. On motion, the trial court set the verdict aside and rendered judgment for defendant. Plaintiff in the trial court sought and obtained this writ of error to that judgment.

The verdict of the jury is conclusive on the question of defendant's negligence. The only debatable question presented is whether decedent was guilty of contributory negligence as a matter of law.

Under well settled rules of weighing evidence, the facts will be stated in the light most favorable to plaintiff.

The accident, resulting in the death of plaintiff's decedent, occurred about 6:00 p. m. on December 7, 1938, at the intersection of Ninth and Broad streets in Richmond. Broad street runs east and west, Ninth street north and south. Defendant maintains two sets of street car tracks, running parallel and near the middle of Broad street. Westbound street cars are operated over the northern set of tracks, and eastbound cars over the southern set of tracks. At this intersection Broad street is 88 feet wide from curb to curb. Ninth

is 41 feet wide. Signal lights control the movement of traffic at this crossing.

Mrs. Ellett, who was 69 years of age, active and alert, with unimpaired faculties of sight and hearing, was attempting to cross Broad street from north to south in the lane marked for pedestrians. As she passed over the southern, or farthest rail from her of the westbound track, she was struck by the extreme left front corner of a westbound street car.

Raymond Mosby, a witness introduced by plaintiff, stated that he was walking north on the west side of Ninth street, and that, when he stepped from the sidewalk into the intersection, the signal light was green for traffic moving north and south. As he reached the middle of the eastbound car tracks he heard the westbound car coming. He looked up and saw the car "nearing" the iron pole in the center of the intersection, which pole is 26 feet east of the center of the pedestrian lane in which he was standing. At the same time, he observed Mrs. Ellett, who was near, if not crossing, the northern rail of the westbound car track. The westbound street car increased its speed and struck decedent as she crossed the southern rail. The motorman did not apply his brakes until at or after the moment of impact. The street car traveled at least 26 feet after striking decedent before it was stopped.

Several witnesses for plaintiff testified that at the moment of impact the signal lights were green for north and southbound traffic. Defendant contends that the lights for north and southbound traffic changed from red to green after the decedent left the sidewalk, and that its car entered the intersection on a green light.

No witness stated in express terms whether the traffic light was green or red when Mrs. Ellett started across Broad street. Raymond Mosby stated that, when he stopped for the street car to pass, he was in approximately the center of the eastbound car track and Mrs. Ellett was walking towards him just north of the north rail of the westbound street car tracks. In other words, while Mosby was walking 39½ feet from the south side of Broad street, Mrs. Ellett was walking ap-

proximately 35 feet towards him from the north side of Broad street. There is no evidence tending to show that either Mrs. Ellett or Mosby paused or stopped after they left the respective sidewalks. If this be true, it follows that Mrs. Ellett left the sidewalk on the green light as Mosby did, and that the traffic signals did not change before the impact.

Other evidence for plaintiff shows that the street car entered the intersection without pausing, traveling at 12 miles per hour. After entering the intersection it increased its rate of speed, or, as one of the witnesses said, "it was picking up speed." Traveling at 12 miles an hour, the street car would have crossed the intersection, 41 feet east and west, in about 3 1/6 seconds. The pedestrian was moving at less than 1/3 the rate of this speed. From these facts and figures, the jury had a right to find, as they evidently did find, that the traffic lights were red for east- and west-bound traffic when the street car entered the intersection from the east.

A pedestrian must exercise ordinary care and caution for his own safety, notwithstanding the fact that he is crossing an intersection on a green traffic light. He has a right to assume that the other members of the traveling public will obey traffic rules and regulations in the absence of some particular event or circumstance indicating the contrary. Mrs. Ellett had a right to assume that the operator of the street car would not enter the intersection against a red light. She was very near, if not crossing, the north rail of the west-bound car track when, according to the testimony for plaintiff, the street car increased its speed approaching her from the left. When this occurred, she had less than two seconds in which to get out of danger. As one witness said: "I stopped in the middle of the car track because I knew I couldn't get across in time to beat this car across and just as I was approaching the track I saw this lady coming across the first track and as she crossed she seemed—appeared to me to have noticed the car and was trying to get across and she got about over the last rail except one foot and to my idea if she could have brought that last foot up off that last rail the car would have passed behind her."

The reasonableness of the conduct of decedent must be determined in the light of the surrounding circumstances, as she is held to such standard of care as was commensurate with the occasion. The jury had a right to infer from the evidence that the following circumstances were controlling. She was walking near the center of the pedestrian lane, where she had a right and duty to be. She was crossing the street when the traffic light was in her favor and against vehicles traveling east or west on Broad street. She had crossed the tracks when struck by the overhanging left front of the westbound street car. The street car's rate of speed was increased when it should have been decreased. There was nothing unusual in the movement of the street car or any other circumstance which was calculated to put her on guard before she started across the rails.

"In arriving at a proper conclusion regarding the degree of care exercised by the parties in a case of this kind, there are many things to be considered, such as distances, speed and within what time and distance an automobile or a street car could be stopped,—all involving matters of opinion, estimates and best judgment. In giving testimony of estimates, it is natural that witnesses should differ. A jury is the better tribunal to form correct conclusions from this kind of evidence." *Virginia Electric & Power Co.* v. *Wright*, 170 Va. 442, 450, 196 S. E. 580.

Fair-minded men may differ as to whether or not the decedent, under the circumstances, exercised ordinary care and caution for her own safety in going upon the tracks without observing the oncoming street car. This conclusion takes the question of contributory negligence to the jury, whose finding thereon is binding upon the court.

The judgment of the trial court is reversed, the verdict of the jury reinstated, and final judgment will be entered for plaintiff.

*Reversed and final judgment.*