# Richmond

## VIRGINIA ELECTRIC AND POWER COMPANY V. DRURY J. HOLLAND, JR.

March 4, 1946.

Record No. 3022.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*T. Justin Moore* and *Leigh D. Williams*, for the plaintiff in error.

*Broudy & Broudy*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Drury J. Holland, Jr. instituted an action at law against the Virginia Electric and Power Company to recover damages for personal injuries sustained by him, and also for damages occasioned his automobile by reason of a collision with one of the defendant's electric street cars at the intersection of Hampton Boulevard and Sewell's Point road in the city of Norfolk. A verdict, approved by the trial court, was found by the jury in favor of the plaintiff.

The Virginia Electric and Power Company upon this writ of error contends that the trial court should have set aside the verdict upon the grounds that it was plainly wrong and without evidence to support it; that the plaintiff was guilty of contributory negligence which bars his recovery; and that the court erred in granting any instructions on the plaintiff's theory of the case, and especially in granting instruction P-4.

Hampton Boulevard extends north and south between Norfolk and the Naval Base. Upon it and in its center the Virginia Electric and Power Company maintains double tracks, and street cars are operating over them to and from the Naval Base.

The roadbed for the car tracks is elevated above the roadway and it is not improved for vehicular travel except at intersecting streets where proper crossings are maintained.

This roadbed of the Power Company and its tracks separate two distinct one-way roadways which are improved. One lies to the west of the tracks and vehicles going south proceed over it. The other lies to the east of the tracks and on it vehicles proceed toward the north.

In the center of the roadway which is devoted to southbound traffic at the intersection of Hampton Boulevard and Sewell's Point road is the usual traffic light. This light controls the electric street cars proceeding to the south as well as vehicular traffic. On the northbound roadway is a similar traffic light controlling northbound vehicular traffic as well as northbound street cars. The crossing is thirty-six feet wide.

The plaintiff was proceeding south on Hampton Boulevard approaching the intersection of Sewell's Point road. He intended to make a left-hand turn at the intersection and to proceed on the latter road. There were two lanes of traffic going his way and he occupied the lane on the right. As a consequence of this he was compelled to pull into the intersection, turn his car to his left, stop and wait for the traffic occupying the left lane of this roadway to pass before he could proceed. After the passage of this traffic he proceeded across the car tracks while the traffic light was green and in his favor after first having looked and seen the southbound street car approaching the crossing about two car-lengths away. He also observed a street car on the tracks going north which had been brought to a stop at the intersection. He saw a number of persons waiting to board the southbound street car and assumed that the street car would be brought to a stop for them to get aboard. He saw the vehicular traffic going north on the other roadway had been brought to a stop. When the southbound street car was six or seven feet away he looked again but it was too late to avoid being struck for he was then on the tracks proceeding slowly.

The evidence discloses an absence of due care upon the part of the motorwoman on the defendant's electric car.

This young woman, who had had no other experience in the operation of cars, had been trained for a period of fifteen days. She had operated cars for a little over two months. As she operated her car upon this occasion just before it reached the crossing she was engaged in waving at the motorwoman on the other street car which was proceeding or about to proceed in the opposite direction. She paid no attention then to the traffic light at the intersection and operated her car through the red light. This intersection is a very busy one. The traffic to and from the Naval Base at the time was very heavy. The operator of this street car also failed to stop to permit those waiting for the street car to get aboard. It was gross negligence on the part of the motorwoman to disregard utterly her duties in the respects named.

We do not think that the plaintiff was guilty of contributory negligence in crossing the tracks under the conditions then existing. The jury has found him free from negligence and we think their finding is abundantly supported. He was proceeding on a green light. He had seen the street car when it was more than two car-lengths away, and he saw the prospective passengers waiting to board the street car. He noted nothing unusual in the manner of the operation of the street car that would have put him or any other person, in the exercise of ordinary care, upon notice that the motorwoman would not obey the law and stop her car when warned to do so by the red light. He also had good reason to believe that she would stop the car for the passengers standing on the corner to get aboard.

Operators of street cars must give heed to signs and signals which control traffic at intersections. One may presume, unless it appears otherwise, that the command of a traffic light will be obeyed. A red light is a command to stop, just as a green light is a command to proceed. Code, sec. 2154 (99). To fail to comply with either command not only invites accidents but also obstructs the traffic. If a traveler has the green light he is not required to stop, look and listen before crossing street car tracks at an intersection.

He is not required or expected continuously to watch a street car which he sees approaching from the left in anticipation of negligence on the part of the motorman. He has the right to assume that the street car will be properly operated and will yield to him the preference to which he is entitled, at least until he has notice to the contrary.

The principles applied in the cases of *Cheatwood* v. *Virginia Elec., etc., Co.,* 179 Va. 54, 18 S. E. (2d) 301, and *Bethea* v. *Virginia Elec., etc., Co.,* 183 Va. 873, 33 S. E. (2d) 651, are controlling here.

An assignment of error is made to the granting of instruction P-4 offered for the plaintiff. It reads:

"The court instructs the jury that if you believe from the evidence that the plaintiff, while attempting to make a left-hand turn into Sewell's Point road, used such care as an ordinarily prudent person would have used under the same conditions and circumstances, then the plaintiff would not be guilty of contributory negligence."

Counsel for the Power Company excepted to the granting of this instruction upon the ground that a left-hand turn, such as was being attempted here, is regulated by statute, and no matter whether he exercised such care as an ordinarily prudent person would have exercised he would still be guilty of negligence if he violated the statutory requirements. He also bases his objection upon the ground that this instruction, as given, was in conflict with instruction No. 7 which was granted upon the request of the defendant. Instruction No. 7 reads as follows:

"The court instructs the jury that every driver of an automobile who intends to stop, turn, or partly turn from a direct line shall first see that such movement *can be made in safety,* and whenever the operation of any other vehicle may be affected by such movement, shall give a signal for a left-hand turn by extending the arm in a horizontal position from the shoulder at least fifty feet before turning, and if you believe from the evidence that the plaintiff violated this statute, and such violation was the proximate or a contributing cause to

the collision, you shall find for the defendant." (Italics added.)

Another instruction which is pertinent here is instruction X-D, granted upon the request of the defendant. It reads:

"The court instructs the jury that unless you believe by a preponderance of the evidence that the light was red against the street car at the time of the accident you shall find for the defendant."

The jury believed that the light was red against the street car, and the evidence justified the belief.

Counsel for the defendant contends that Code, sec. 2154 (122) controls the case and upon it he requested and was granted instruction No. 7 set out above. The language of the pertinent portion of that section is embraced in the instruction.

There were other instructions, among them D-2 and Z-D, granted upon the request of the defendant. By instruction D-2 the jury were told that even if the defendant were guilty of negligence, nevertheless if the plaintiff saw or should have seen that an accident was imminent and thereafter, by the exercise of ordinary care, could have stopped or turned and avoided the accident, then he could not recover.

By instruction Z-D the jury were told that even if the red light were against the street car it nevertheless was the duty of the plaintiff to exercise such care as a reasonably prudent person would have exercised in like circumstances for his own safety, and if he failed in this respect he could not recover.

Instructions were also granted submitting to the jury the issues of contributory negligence and of concurring negligence.

We are of opinion that when the instructions are read and considered together they fairly and fully submitted all relevant issues to the jury. From them it appears unlikely that they confused the jury or that they were conflicting.

There is no difficulty in applying the instructions to the facts as shown by the evidence. The evidence does not disclose that the plaintiff blindly relied upon the traffic

signal, to his own injury, by entering upon the car tracks in the path of a fast-moving street car that gave indications that it was going to run through a red light and strike him. He was not put on notice that the street car would not stop, but on the other hand he had every reason to believe that it would stop. The green light was an invitation for him to proceed. The jury, from the evidence, were warranted in believing that he did not violate Code, sec. 2154 (122), and that he looked and saw that his negotiation of the crossing could be made in reasonable safety. We measure the words, "made in safety", used in the statute and used in instruction No. 7, by the rule of reason and the ordinary rule of human conduct under existing conditions. Seeing that a movement can be "made in safety" does not mean that a driver of an automobile must wait at a crossing which is controlled by a traffic light for all street cars to pass, even though they may be a sufficient distance away which, under ordinary conditions, taking into consideration all the attendant circumstances, would not render it unsafe to go across the tracks. There would appear to be no other rule to guide the operator of an automobile under these conditions than the one of ordinary care.

From the argument of counsel for the defendant it appears that he gives to the statutory words, "made in safety", the meaning that a movement can only be made when it can be done free from all possibility of danger. If movements in traffic could be made only when there were no possibility of danger, traffic would have great difficulty in moving at all.

We think the judgment should be affirmed.

*Affirmed.*