# Staunton

## VIRGINIA TRANSIT COMPANY v. QUENTIN C. JAMES, ADMINISTRATOR OF THE ESTATE OF SIMON SERENA JAMES.

September 8, 1948.

Record No. 3353.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

*T. Justin Moore* and *Leigh D. Williams*, for the plaintiff in error.

*Louis Lee Guy* and *Llewellyn Richardson*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This action was instituted by Quentin C. James, administrator of the estate of Simon Serena James, to recover damages for the death of his intestate, who died as a result of injuries sustained when struck by a street car operated by the Virginia Transit Company. A jury returned a verdict for $5,000 in favor of the plaintiff. This verdict was approved by the trial court, and judgment was accordingly entered against the defendant.

The sole question for our consideration is the sufficiency of the evidence to support the verdict. The defendant contends that the evidence fails to show that it was guilty of any negligence; but, if so, that the plaintiff's decedent was guilty of contributory negligence.

The accident occurred on Hampton Boulevard, near the entrance to the U. S. Naval Supply Depot, in the city of Norfolk, between 7:30 and 8:00 a. m. on February 16, 1945.

Hampton Boulevard extends north and south between the business district of Norfolk and the U. S. Naval Operating Base. Upon it and in its center the Virginia Transit Company maintains double tracks and operates street cars over them to and from the Naval Base. On either side of its tracks is a paved vehicular roadway, the eastern roadway being for northbound traffic and the western being for southbound traffic. The portion between the two roadways, that is the portion occupied by the street car tracks, is unpaved except at certain crossings. The western edge of the northbound roadway is 12 feet 6 inches from the eastern rail of the northbound car tracks. Opposite the entrance to the U. S. Naval Supply Depot, sometimes known as the Old Army Base, is a crossroad over Hampton Boulevard and the street car tracks, leading to the entrance to the Naval Supply Depot. The crossroad is 58 feet wide and hard surfaced.

Plaintiff's theory of the accident was that James started to walk along the paved crossroad and across Hampton Boulevard and the street car tracks, when a street car of the defendant was standing still, 8 to 10 feet from the intersection; that the motorman of the street car, with full opportunity to observe the decedent and the course taken by him, negligently started his car, advanced its speed, and struck the decedent.

The theory of the defendant was that James, in full possession of his faculties, in broad daylight, stepped in front of the moving street car, some distance north of the crossroad, when the motorman had no reason to assume that he would enter upon the car tracks.

There is no right of way question involved, no question of the last clear chance raised, and no instructions relative thereto were given.

The evidence as to the accident was sharply in conflict on all material points. In view of the verdict of the

jury, its sufficiency must be considered in the light most favorable to the plaintiff.

Simon Serena James, 66 years of age, in good health, and physically active, was a resident of the city of Norfolk. He was employed as a janitor at the U. S. Naval Supply Depot Annex, located on the west side of Hampton Boulevard.

On February 16, 1945, he boarded a bus, with a number of other passengers, for transportation to his place of employment. The bus proceeded north along Hampton Boulevard until it passed over the crossroad, which intersected Hampton Boulevard at the entrance to the Naval Supply Depot. It stopped against the curb on the right-hand side of the intersection, that is, the northeast corner, to unload some passengers. James got out of the right door of the bus. The bus started off and James proceeded to cross Hampton Boulevard to the Naval Supply Depot entrance on the west side of the highway. While walking across, he was struck by a northbound street car and received injuries from which he died twelve days later.

Two eye-witnesses, J. Griffin and J. Tune, testified for the plaintiff. They were on the way to their work, in an automobile on the northbound driveway, travelling behind the bus occupied by James.

Griffin, who was driving his automobile, was proceeding slowly because traffic was very heavy that morning. He said that when he was about 300 feet from the crossroad, he first saw James "a little piece behind the bus" from which he had alighted. James was about 15 feet from the eastern rail of the northbound street car track, walking at an ordinary gait on the crossroad towards the tracks. At that time the street car was in motion about 30 feet from the crossing, and traffic was moving across the street car line. The weather was clear and there was nothing to prevent James from seeing the street car or to prevent the motorman of the street car from seeing James.

Griffin next observed James as he walked upon the tracks. He saw the street car advance, hit him, knock him down, and

carry him a distance of 75 feet ahead. When James was struck, the automobile of Griffin was 40 feet from the rear of the street car.

Tune said that the automobile occupied by him was about 150 feet from the crossing when he first saw James. James was then on the paved crossroad, about five steps from the street car tracks, "headed towards the gate" of the Naval Supply Depot, walking at an "average" gait. At that time, said Tune, the street car was standing still at its usual stopping place, where some of its passengers had gotten off. The stopping place was short of the crossroad over which "the people had to cross over to get into the gate of the depot." The next and last time he saw James the street car had started up, left its stopping place, and "was sort of pushing him down." The street car pushed the body of James between 90 and 100 feet beyond the crossing before it came to a stop.

A witness for the defendant, a passenger on the car, testified that James had "passed the center of the car, passed the headlight" before the car came in contact with him.

The motorman of the street car testified that he stopped his car 8 or 10 feet from the crossing to let off some passengers. The car was well loaded, with passengers standing in its aisle and six or eight on the front platform. Some of the departing passengers crossed the street in front of the street car. The motorman said he then started up and saw a colored man coming towards the tracks about 200 feet from where the street car had stopped; that he brought his car almost to a stop and sounded his gong; that the man kept walking forward until he got within 4 or 5 feet of the tracks and then stopped; that as the man stopped he applied the current to his car, increased his speed to 5 of the 8 notches on his controller, and proceeded a distance of about 25 feet at his advanced speed; and that when he was about 8 feet from the man, the man stepped upon the tracks and was hit by the car. He placed the point of impact at 125 feet from the crossing, and said James was carried on the fender of the car about 6 to 10 feet.

Other witnesses for the defendant placed the accident at varying points north of the crossing.

A large number of instructions were given the jury for both the plaintiff and the defendant.

The two principal issues submitted to the jury were whether the accident happened at the crossing, and whether the street car was in motion when the deceased was as much as five steps away from its tracks. The jury were specifically told in plaintiff's instruction No. 2-b that in order for the plaintiff to recover, they must believe, among other things, that the accident happened at the crossing, and in defendant's instruction Z, that if they believed the street car was in motion when the deceased was as much as five steps away from the tracks they should find for the defendant.

It is indicative of the view of the jury, that they first returned a verdict in which they said they found for the plaintiff, "under instruction No. 2-b." After being told by the court that they would have to base their verdict on all of the instructions, they returned a verdict in proper form in favor of the plaintiff.

The evidence relative to the negligence of the defendant and the contributory negligence of the plaintiff's intestate presented questions peculiarly for a jury's consideration. The jury has accepted the evidence of the plaintiff that the accident happened on the crossroad, and that the street car was at a standstill when James was within not more than five steps of the track and proceeding towards its rails. These two findings are binding upon us in view of the evidence. We must further consider the case in view of these findings.

It was within the province of the jury to determine the reasonableness of the conduct of James in the light of the circumstances found existing at the time of his injury. According to the evidence for the plaintiff, James started across the street. When he was, at the most, five steps from its tracks, the street car was standing still at a passenger stop about 8 to 10 feet from the crossing. James was in plain view of the motorman, who admits he saw the former.

The motorman, however, started the street car without warning, slowed down, then substantially advanced his speed, and, before he could stop, struck and mortally injured the decedent. James was struck by the left front of the street car indicating that he had passed the center of the tracks.

■ James had the right to cross the tracks of the defendant. His opportunity to exercise that right came while the street car was standing still. He was moving with other traffic on a busy thoroughfare across two lanes of vehicular travel and a double street car line. He could not safely keep his eyes on the street car stopped 35 to 40 feet on his left, while other traffic was moving about him. He had the right to assume that the motorman of the street car would operate with ordinary care. It takes but a short time to make five steps, and the whole occurrence took place within a few seconds.

On the whole, there is credible evidence that the motorman failed to use due and ordinary care under the circumstances.

The fact that the street car was standing still near the intersection when the plaintiff, five steps from the street car tracks, attempted to cross them takes it out of the line of those cases relied on by the defendant. The facts here are unlike those in *Gordon v. Virginia Elec., etc., Co.*, 150 Va. 442, 143 S. E. 681, and cases therein cited; that is, the type of case where a pedestrian steps in front of a moving street car by reason of carelessness or bad judgment.

We have been cited to only one case from Virginia, in which a street car operator started from a complete stop and ran down a pedestrian at an intersection, and that *Virginia Elec., etc., Co. v. Blunt*, 158 Va. 421, 163 S. E. 329. The street railway company was there held guilty of negligence. While the facts in that case are not the same as those here, the circumstances are similar in some respects, and the same principles of law apply.

See also, *Virginia Elec., etc., Co. v. Whitehurst*, 175 Va. 339, 8 S. E. (2d) 296; *Cheatwood v. Virginia Elec., etc., Co.*,

179 Va. 54, 18 S. E. (2d) 301; and *Virginia Elec., etc., Co. v. Holland*, 184 Va. 893, 37 S. E. (2d) 40.

The jury's verdict, approved by the trial court, has established the negligence of the defendant and the lack of contributory negligence of the plaintiff's intestate. We cannot say that the verdict is plainly wrong or without evidence to support it. The judgment of the trial court is affirmed.

*Affirmed.*