**C. W. HUDSON, Appellant,**

v.

**Aubrey HIGHTOWER, Appellee.**

No. 11323.

Court of Civil Appeals of Texas.

Austin.

June 30, 1965.

Rehearing Denied July 21, 1965.

Camp & Camp, Robert L. Ellett, Cameron, for appellant.

Donald G. Humble, Cameron, for appellee.

PHILLIPS, Justice.

This is a damage suit resulting from the collision of two automobiles at the intersection of North Fannin and Marlow Road in Cameron, Texas. Appellee Hightower, the plaintiff below, was driving his car north on North Fannin at noontime. Appellant Hudson, defendant below, drove his car into North Fannin from the west and the two cars collided. Those entering North Fannin from Marlow Road are required by law to yield the right of way and there is a yield right of way sign at this intersection facing Marlow Road.

There was a cross assignment against appellee for damages alleging negligence on the part of appellee in operating his vehicle.

There is no question but that appellee received bodily damage and damage to his vehicle as a result of the collision and these facts are not in issue here.

At the conclusion of the trial, the jury made the following findings with respect to the special issues submitted: that appellant Hudson failed to keep a proper lookout; that this failure was the proximate cause of the accident; that appellant was driving at an imprudent rate of speed; that such was the proximate cause of the accident; that appellant failed to yield the right of way; that such failure to yield the right of way was the proximate cause of the accident.

The jury found that appellee had not operated his car at an excessive speed and did not fail to keep a proper lookout.

The court entered judgment on the jury's verdict for appellee and appellant has perfected his appeal to this Court.

We reverse the judgment of the trial court and remand the case for trial.

Appellant is before us on two points of error. The first being that of the trial court in allowing testimony from a witness as to the manner in which appellant had operated his automobile in the past at the intersection in question. The second point of error being that of the trial court in instructing the jury that the testimony complained of in point of error number one should be considered only in the light of impeachment of certain testimony previously offered by appellant.

Appellant, during direct examination, testified with reference to his speed in crossing the intersection where the accident occurred as follows:

"Q   Now, Mr. Hudson you testified I believe that as you entered the intersection of North Fannin and Country Club Road that you were driving some two or three miles an hour?

A   That is right.

Q   Why were you driving so slow?

A   Well, we always have to slow up there to watch the traffic coming from north or south."

On cross-examination with reference to the same subject the following testimony was adduced from appellant:

"Q   Mr. Hudson, you said you always have to slow up there for traffic?

A   Yes, sir.  Don't always have to, no.

Q   You said a minute ago in response to a question by Mr. Camp you always have to slow up there.

A   Yes, sir.

Q   Same speed, same everything?

A   I have always come to a pretty slow—before you cross to check the traffic."

Subsequently Walter Wallace, who also testified as an eye witness to the collision, was called to testify by appellee and the following exchange occurred between the witness, the court and attorneys representing appellant and appellee:

"Q   All right.   Mr. Wallace prior to February 9, 1963, had you seen Mr. Hudson come through that intersection on prior occasions?

MR. CAMP: Now may it please the Court, we are going to object to this, it is immaterial, irrelevant, things transpiring prior to the date.

MR. KOEHNE: Judge, he opened it up.

THE COURT: Mr. Morgan will you retire the jury into that room while we discuss this.

(The jury retired).

MR. CAMP: May I ask him one or two questions on voir dire?

THE COURT: All right, go ahead.

BY MR. CAMP: (Counsel for appellant)

Q   Walter, have you and Aubrey discussed this case since you testified this morning?

A   No, sir.

Q   Didn't talk about it when you were talking together?

A   No, sir, not talking about the case.

Q   Didn't say anything about the case?

A   No, sir.

MR. CAMP: O.K.

MR. KOEHNE: You have talked to me though haven't you?

A I talked to the lawyer. The only ones I was instructed to talk to.

THE COURT: All right, go ahead.

BY MR. KOEHNE: (Co-Counsel for appellee)

Q Mr. Wallace, prior to February 9, 1963, had you seen Mr. Hudson go through this intersection of Fannin and Marlow Road before?

A Now make yourself a little bit clearer, have I saw him go through there.

Q Have you seen him traveling in an easterly direction on Marlow Road through this intersection before February 9, 1963?

A You mean have I seen him traveling through there?

Q Yes, sir.

A Yes, sir.

Q 'On a few occasions or on many occasions, how frequently?

A Well, I'd say three or four times a day, five or six, he goes back and forth home every day.

Q All right. Now on these prior occasions that you have seen him, now prior to February 9, 1963, could you tell the Court how he goes through that intersection there?

A Generally goes through there too fast.

Q How fast does he usually go through there?

A I'd say I have seen him go through there 50 or 60 miles an hour. I don't like to get into this kind of thing but that is the truth."

The court recalled the jury and then permitted Wallace to testify in the same manner set out above.

At the conclusion of the evidence the trial court submitted special issues to the jury. Included in the court's charge was the following instruction with reference to the controversial testimony by witness Wallace given over objection of appellant:

"You are instructed that the testimony of Walter Wallace regarding the operation by C. W. Hudson of his vehicle on occasions prior to the date of the accident in question has been admitted before you for the sole purpose of rebutting Hudson's testimony as to how he operated his vehicle in crossing the intersection in question on such prior occasions.

And you are further instructed that Walter Wallace's testimony in this regard is not to be considered by you, and is no evidence of, the speed, or the manner in which C. W. Hudson entered the intersection on the date of the collision in question."

■ We are of the opinion that the admission of this testimony for any purpose was error. It is admitted by both of the parties to this lawsuit that the original testimony of C. W. Hudson as to the method he always operated his car at the intersection was inadmissible. This is true even though there was no objection at the time to its admission. Consequently, the impeachment testimony was equally inadmissible for any purpose whatsoever.

■ McCormick and Ray in Texas Law of Evidence in Sections 682, 683 and 684, beginning on page 525, state the general rule in this matter to the effect that where a witness asserts a particular fact to be true, other witnesses may be called who deny the truth of the fact testified to by the first witness and state that the opposite is true if such contradictory testimony is

relevant. Continuing in Section 683, Mc-Cormick states the law as follows:

"The rule which permits a witness to be contradicted by other witnesses is subject to one important limitation. That is, he cannot be contradicted upon a collateral or immaterial matter (here the author cites numerous Texas cases on the point of immaterial or collateral matters.) The chief reasons for excluding contradiction on collateral matters are reasons of policy. First, too great an inconvenience would result if every alleged error could be investigated. Much time would be wasted and the issue confused. Second, it would be unfair to the witness to expect him to come prepared to meet any error that might be alleged, although entirely beyond the matters in litigation." Continuing in Section 684:

"Although the rule that error on collateral matters may not be shown is well established, the rule itself marks out no definite line of exclusion. The difficult question is left unanswered. What matters are collateral and what are not? Only one satisfactory test appears to have ever been devised. This was laid down in the English case of Attorney-General v. Hitchcock (1847, 1 Exch. 99). In Professor Wigmore's words it is: 'Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?' (Wigmore Section 1003). Although this test was set up in connection with the doctrine of self-contradiction, it is equally applicable here. The test is simple, definite and easy of application, * * *."

We hold that under the abovementioned test, appellant's testimony as to his habit of approaching the intersection at which the collision occurred was inadmissible, consequently, contradicting testimony was inadmissible and of a sufficiently prejudicial nature as to require a new trial. Con-sequently, we reverse this case and remand it for a new trial.

The judgment of the trial court is reversed and remanded.

Reversed and remanded.

## ON MOTION FOR REHEARING

HUGHES, Justice.

Appellee denies our statement that, "It is admitted by both parties to this lawsuit that the original testimony of C. W. Hudson as to the method he always operated his car at the intersection was inadmissible."

We based this statement, as to appellee, on this language in his brief:

"Appellee concedes that such testimony by the witness Walter Wallace could not have been initially admitted as proof of appellant's habit in crossing the intersection to show probably present conduct, but when appellant unequivocally asserts that his conduct on the day in question was his habitual conduct, the issue of irrelevance has also been effectively removed. Appellee was not trying to establish present conduct by past habit or custom, but simply rebutting, for impeachment purposes, appellant's assertion that he always slowed up at this intersection. The two examples are worlds apart and do not involve the same rule of law. Appellant is confusing the two issues by asserting that the impeachment attempts to inject collateral issues or collateral conduct into the case. No citation of legal principles or authorities is necessary, we think, to demonstrate such fallacy. Appellee contends that the controverted testimony would actually be admissible for unlimited purposes were it not for the Texas rule against proof of custom or habit in this manner, so therefore it could not be excluded as impeachment because immaterial, irrelevant or collateral matter."

Regardless of appellee's admission, the testimony of C. W. Hudson as to the usual manner in which he drove his car through the intersection was inadmissible since there were eyewitnesses to the collision. M. K. & T. Ry. Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931.

The fact that this testimony was admitted without objection did not, in our opinion, give appellee the right to introduce impeaching evidence. The policy issues involved in trying collateral issues should not be controlled by or made to depend upon the alertness of counsel.

Upon examination of the entire record, it is our opinion that reversible error was committed by the trial court in this respect. Rule 434, Texas Rules of Civil Procedure.

The motion is overruled.

Motion overruled.